IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 5:23-cr-00188-4

CHAD LESTER

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Chad Lester's Motion for a New Trial, [ECF No. 257]. The United States timely responded, [ECF No. 259], and the Defendant did not reply. For the reasons that follow, the motion is **DENIED.**

I. **BACKGROUND**

A federal grand jury returned an 18-count Indictment against the Defendant and five other Southern Regional Jail ("SRJ") correctional officers for the death of pretrial detainee Quantez Burks after they subjected him to unreasonable force. [ECF No. 4]. The five correctional officers pled guilty, but the Defendant Chad Lester went to trial on Counts Four, Five, and Fourteen.

Throughout the four-day trial, a federal jury heard evidence that correctional officers knew about the camera-less "blind spots" of the jail where officers would use unreasonable force against inmates. The jury also heard testimony that Quantez Burks was taken to two such "blind spots," so that correctional officers could use unreasonable force against him in retaliation for earlier conduct. That force included a chokehold, "knee strikes," picking up and dropping Burks, and slamming his head into a metal door frame. Ultimately, the jury learned that Quantez Burks suffered bodily injury and died because of the officers' conduct.

Four defendants named in the Indictment also testified about the Defendant's actions to cover-up the assault on Quantez Burks. Those defendants, correctional officers, testified that the Defendant had instructed them to write false reports about the incident and relay false cover stories to investigators. The jury also heard evidence that the Defendant himself had provided false information to Federal Bureau of Investigations (FBI) agents.

The jury found the Defendant guilty on all three counts. [ECF No. 252]. The jury found that the Defendant (1) conspired to tamper with a witness, victim, or an informant in violation of 18 U.S.C. § 1512(k), (2) tampered with a witness, victim, or an informant in violation of 18 U.S.C. § 1512(b)(3), and (3) knowingly and willfully provided false information in a matter with the FBI's jurisdiction in violation of 18 U.S.C. § 1001. *Id.* Now, the Defendant moves for a new trial under Federal Rule of Criminal Procedure 33(a). [ECF No. 257].

## II.     LEGAL STANDARD

Under Rule 33(a) "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).[1] These motions are "disfavored," and a court should only grant them "sparingly." *United States v. Ali*, 991 F.3d 561, 570 (4th Cir. 2021). A motion for "new trial should be granted only when the evidence weighs heavily against the verdict." *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985). Still, "a Rule 33 motion is designed to rectify factual injustice, not to correct legal error." *United States v. Brown*, No. 21-4554, 2022 WL 2914730, at *3 (4th Cir. July 25, 2022) (per curiam) (citing *United States v. Blackwell*, 436 F. App'x 192, 198 (4th Cir. 2011) (per curiam)).

---

[1] I note that a different standard applies to Rule 33 motions based on newly discovered evidence. *See United States v. Banks*, 104 F.4th 496, 509 (4th Cir. 2024) (citing *United States v. Robinson*, 627 F.3d 941, 948 (4th Cir. 2010)). Seeing that the Defendant's motion makes no specific offer of newly discovered evidence and his arguments are mainly legal, I will construe the motion as one for a new trial based on "other grounds." *See* Fed. R. Crim. P. 33(b).

### III. ANALYSIS

The Defendant offers three grounds for a new trial, [ECF No. 257]. First, he argues that the court erred in limiting his cross-examination of the United States's witnesses about their plea deals. Second, he asserts that the court erred in excluding video footage of Quantez Burks's arrest. Third, he argues that the pace of trial negatively affected the Defendant's case-in-chief.

#### A. Cross-Examination of United States's Witnesses

Defendant argues that the court "grossly" limited the Defendant's ability to impeach the United States's witnesses about the plea deals they had to reduce their sentences. [ECF No. 257]. In contrast, the United States argues that the court properly allowed broad cross-examination. [ECF No. 259]. I agree with the United States.

To start, at the end of the first day I recommended a commonsense solution to the parties: agree on redactions to the plea agreements and present those agreements to the jury. They, however, could not reach an agreement by the start of the second day of trial. That morning the Defendant chose *not* to cross-examine Ashley Toney, a co-defendant originally named in the Indictment who entered into a plea agreement with the United States.

The Defendant did cross-examine Mark Holdren, a co-defendant who entered into a plea agreement. In cross-examination, the witness admitted that he told a different story once he started cooperating with the Government, in an attempt to reach a plea agreement. The witness agreed that a plea agreement would limit the amount of time he might go to prison, and the witness specifically said that his plea agreement would limit his exposure to no more than 30 years incarceration.

The Defendant also cross-examined Jonathan Walters, another co-defendant who entered into a plea agreement. The witness agreed that he was facing "pretty serious time," that he entered

into a plea agreement, that he pled guilty to a "very serious crime," and that he would like for the Government to provide "whatever help they could to get [his] sentence reduced if possible." Lastly, the witness agreed that his "bargain" with the Government was to cooperate and testify for it in the trial.

  The Defendant also cross-examined Steven Wimmer, an SRJ correctional officer charged in connection with the death of Quantez Burks. The witness said he pled guilty to a count of conspiracy, that he entered into a plea agreement, that he was exposed to a considerable term of imprisonment, and that he would prefer not to serve that time in prison. The witness also testified that he had met with the Government numerous times in preparation of his testimony, hoping that the Government would help him if it was content with the cooperation he provided. The witness agreed that the Government would make a recommendation on his sentence and that he would want the Government to make such a motion to reduce his sentence.

  Lastly, the Defendant cross-examined Jeffery Forinash, another SRJ correctional officer charged in connection with the death of Quantez Burks. The witness stated that he was at the trial testifying pursuant to an agreement he had with the Government. The witness testified that he had met with the Government at least two times to review video footage and improve his recollection.

  Reviewing the record, it is clear that the Defendant *had* opportunities to cross-examine the witnesses on their plea agreements, and the Defendant did just that. Even one witness, Mark Holdren, specifically mentioned the 30-year ceiling contained in his agreement. At least two other witnesses, Jonathan Walters and Steven Wimmer, specifically testified that they wished the Government would make a motion to reduce their sentence in exchange for their testimony. Clearly, the Defendant showed the jury that the witnesses would benefit from testifying against him.

Even beyond the ample opportunity the Defendant had to cross-examine the United States's witnesses, the district court has "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). This includes the district court's discretion not to permit the testimony of specific sentences. *United States v. Cropp*, 127 F.3d 354, 358 (4th Cir. 1997) (reviewing Fourth Circuit cases where the district court properly limited cross-examination). Relying on this line of cases, the Fourth Circuit has said that "a district court may prohibit the defendant from asking questions about the 'specific penalties' the witness faced before pleading guilty." *United States v. Dunlap*, No. 22-4163, No. 22-4185, 2025 WL 89078, at *2 (4th Cir. Jan. 14, 2025) (unpublished) (quoting *Cropp*, 127 F.3d at 358–59).

Here, I did the same thing because "the risk of jury nullification outweighs the probative value of information about specific sentences." *Id.* Despite this, Defendant Chad Lester elicited testimony from nearly every relevant witness about their cooperation with the Government and their expectation for a reduced sentence. In one instance, the Defendant successfully introduced that a witness was facing nearly 30 years. This wide latitude of cross-examination fully satisfied the Defendant's right to confrontation. Therefore, this cannot be a ground for a new trial.

### B. Body-Cam Footage

Next, the Defendant argues that the court erred when it excluded the video of Mr. Burks's arrest less than 24 hours before he died in SRJ custody. I addressed this evidentiary issue on the last day of trial. At the time, I agreed with the United States that the video was irrelevant to the

5

conduct of the Defendant the following day, especially because the Defendant had no knowledge of Mr. Burks's behavior as seen in the video.

The Defendant's argument fails again for two reasons. At first glance, it might appear to be Federal Rule of Evidence 404 evidence—that Mr. Burks's conduct the day of his arrest is evidence of his conduct the day that he was killed. This is not admissible. "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Still, the Defendant had no knowledge of Mr. Burks's conduct the day of his arrest. Therefore, it follows that there would be no relevance of the evidence in light of the Defendant's role in covering up the killing of Mr. Burks. He had no knowledge of Mr. Burks's conduct the day before, so it would not be possible for the Defendant to act with that in mind. The Defendant himself would not be able to rely on this "propensity" evidence, even if it was admitted. The evidence would only serve to unduly prejudice the jury, confuse the issues, and provide irrelevant evidence. *See* Fed. R. Evid. 403.

Second, even though I excluded the body-cam footage, I did not prohibit the Defendant from examining or cross-examining witnesses as to Mr. Burks's state of mind at the time of his death. Multiple witnesses, co-defendants of the Defendant who were present when Mr. Burks died, could testify to his state of mind. Based on the Defendant's ability to elicit testimony of Mr. Burks the day he died, this cannot be a ground to grant a new trial.

### C. Pace of Trial

Lastly, the Defendant argues that the pace of trial inhibited his ability to put on his case. While I appreciate the complete and thorough presentation of evidence in any trial, I do not subject the jury to cumulative evidence. *See* Fed. R. Evid. 403. Primarily, I was concerned with the United States's presentation of cumulative evidence. The record makes this clear as I expressed my

concerns on day two of the trial during the testimony of Dakota Hood, who testified to the layout of Southern Regional Jail, and Amber Huddleston, an inmate at the time of the incident, who testified to what she heard. Those instances—and others—did not impact the Defendant's case-in-chief.

In fact—in an effort to help the Defendant be fully prepared to present his case—I made an exception to my usual rule that both parties should be ready to call all of their witnesses throughout the entire trial. In the middle of the third day of trial, a Friday, the United States rested after it had seemingly reduced its own number of witnesses in the interest of not presenting cumulative evidence. The Defendant was not prepared to call his witnesses and requested that the trial day end so that it could resume the following Monday. Reluctantly, I granted the Defendant's request so that he could fully prepare over the weekend.

This is not grounds for a new trial. *See Geders v. United States*, 425 U.S. 80, 86 (1976) ("A criminal trial does not unfold like a play with actors following a script; there is no scenario and can be none. The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process."); *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006) ("Questions of trial management are quintessentially the province of the district courts."); Fed. R. Evid. 611(a)(2) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . avoid wasting time."); Fed. R. Crim. P. 57(b) ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district."); Fed R. Crim P. 2 ("These rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay.").

### IV.    CONCLUSION

For these reasons, the Defendant's Motion for a New Trial, [ECF No. 257], is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:    May 14, 2025

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE